**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-20907-CR-COOKE**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALCATEL-LUCENT, S.A.,
   f/k/a "Alcatel, S.A.,"


        Defendant.
_____

**VICTIM INSTITUTO COSTARRICENSE DE ELECTRICIDAD'S**
**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR RELIEF**
**PURSUANT TO 18 U.S.C. §3771(d)(3) AND OBJECTION**
**<u>TO PLEA AGREEMENTS AND DEFERRED PROSECUTION AGREEMENT</u>**

Victim Instituto Costarricense de Electricidad ("ICE"), submits this memorandum of law in support of its Petition for Relief Pursuant to 18 U.S.C. §3771(d)(3) and Objection to Plea Agreements and Deferred Prosecution Agreement (the "Petition").   As a victim of the defendants' worldwide criminal scheme, ICE is entitled to and therefore demands restitution and any other relief to which it is entitled by applicable federal law.

## Introduction

On December 27, 2010, the Department of Justice (the "DOJ") brought criminal charges against Alcatel-Lucent, S.A. ("Alcatel-Lucent") and its subsidiaries, Alcatel-Lucent France, S.a., Alcatel-Lucent Trade International, AG, and Alcatel Centroamerica, S.A., (the "Alcatel Subsidiaries"), based on their world-wide practice of bribery and corruption that had persisted for decades.[1]   Alcatel-Lucent and the Alcatel Subsidiaries (collectively, the "Defendants" or "Alcatel") and the DOJ have requested Court approval of Plea Agreements with the Alcatel subsidiaries and a Deferred Prosecution Agreement (the "DPA" and, collectively with the Plea Agreements, the "Agreements") with Alcatel-Lucent.

Despite causing ICE millions of dollars in actual damages, the DOJ has allowed each of the Alcatel Subsidiaries to plead guilty to only one-count of conspiracy under 18 U.S.C. §371 and the parent company to enter into a Deferred Prosecution Agreement acknowledging violations of the Foreign Corrupt Practices Act for failing to keep accurate books and records or to maintain adequate internal controls.   The parent thus conveniently avoids the stigma of a criminal conviction and the administrative and regulatory consequences of its acts.

Even as ICE struggles to obtain the equipment and services necessary to operate the system Alcatel failed to deliver pursuant to contracts resulting from its illegal scheme, the DOJ inexplicably continues to ignore its obligations to ICE under 18 U.S.C. §3771, including the right to restitution.   Despite having conducted no investigation into the actual harm suffered by ICE, the DOJ constructed a resolution whereby the Defendants would pay fines of $92,000,000 - a fraction of the actual damages incurred by ICE.   Further, the DOJ contends a "policy" exists that prohibits ICE from being recognized as a "victim", and even alleged that ICE and its 16,500 employees were "participants" in Alcatel's scheme because bribes paid to two ICE employees and three of its directors. Indeed, Alcatel and the DOJ sought to deprive ICE of its statutory

---

[1] The DOJ filed two criminal cases: one against Alcatel-Lucent, Case No. 10-20907 (S.D. Fla.), and one against the Alcatel Subsidiaries, Case No. 10-20906 (S.D. Fla.).  This memorandum and the related Petition are being filed in both cases.

victim rights by attempting to obtain approval of the Agreements without affording ICE its legal rights or the benefit of the DOJ's fundamental obligations under federal law.  The DOJ and Alcatel seek to exclude ICE – by filing Plea Agreements and a Deferred Prosecution Agreement that avoid pre-sentencing proceedings – because the sanctions are far from commensurate with the crimes.  In light of these facts, and pursuant to 18 U.S.C. 3771(d)(3), ICE respectfully demands recognition of its rights as a victim of Alcatel's crimes and that the proposed Plea Agreements and Deferred Prosecution Agreement be rejected by this Court.

I.   **The Protection of Victims' Rights has Been at the Center of Congressional Legislation for Nearly 100 years.**

Since 1925, Congress has recognized the importance of restitution to victims of certain crimes, beginning with enactment of 18 U.S.C. § 3651 which allowed courts to suspend sentences, place defendants on probation, and order payment of restitution as a condition of probation.  U.S. v. Brennan, 526 F.2d 378, 382 (E.D.N.Y. 2007).  Continuing this trend, Congress passed the Victim and Witness Protection Act of 1982 ("VWPA") giving federal courts discretion to order restitution in any criminal case arising under Title 18 of the United States Code.  18 U.S.C. § 3663 (1982); Brennan, 526 F.2d at 382.  Congress passed the Mandatory Victim Restitution Act ("MVRA") in 1996, which removed discretion available to a federal court and made restitution mandatory for certain offenses, including those under Title 18.  18 U.S.C. § 3663A (1996); see also U.S. v. Bogart, 490 F. Supp. 2d 885, 905 (S.D. Ohio 2007) ("The legislative history behind the change in the language of the VWPA, subsequently adopted by the MVRA, which broadened the reach of a court's restitutionary powers to victims and conduct beyond those enumerated in the indictment, clearly indicates that Congress intended to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being.").  Restitution statutes "demonstrate a clarion congressional intent to provide restitution to as many victims and in as many cases as possible." U.S. v. Martin, 128 F.3d 1188, 1190 (7th Cir. 1997).  Finally, in 2004, Congress passed the Justice For All Act, which included the creation of a Crime Victims Rights Act (the "CVRA").  18 U.S.C. § 3771 (2004).

A.   **The Crime Victims Rights Act**

The CVRA guarantees victims of federal crimes an extensive arsenal of rights in the district court where the crimes are charged.  These rights include the right to be heard at public proceedings, the right to be treated with fairness and respect, and the right to full and timely

restitution as provided by law.  § 3771(a).  Additionally, the CVRA imposes on officers and employees of the DOJ involved in investigating and prosecuting crimes the obligation to "make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)." Id. § 3771(c)(1). The DOJ considers the protection and assistance of crime victims as a top priority.  Indeed, the motto of the Office for Victims of Crime, a component of the DOJ's Office of Justice Programs, is "Putting Victims First."[2]

In 2005, the DOJ published the Attorney General Guidelines for Victim and Witness Assistance (the "Guidelines").  A foreword by then-Attorney General Alberto R. Gonzales encapsulates the DOJ's duties under the statute:

> We at the [DOJ] have a duty not only to uphold the rights of individuals who are accused or convicted of a crime but to protect the rights of the victims of crime. Dedicated professionals throughout the [DOJ] work to vindicate the rights of crime victims under law, to offer them aid . . . and generally to ease their interaction with the criminal justice system. Crime victims deserve no less.

Guidelines at 2.  The Guidelines detail the broad array of services and procedures applicable to crime victims, and specifically incorporate the extensive provisions of crime victims' rights and remedies of the Justice for All Act.  This includes the CVRA's obligation to use best efforts to accord rights to crime victims.  Id. at 5.  In construing the Guidelines, the DOJ states that "a strong presumption exists in favor of providing rather than withholding assistance and services to victims and witnesses of crime."  Guidelines at 8.  Failure to adhere to the CVRA and Guidelines has resulted in a least one court admonishing the DOJ for failing to meet its statutory obligations to assist crime victims when it "positively **opposed** investigation of a possible restitution award." U.S. v. Serawop, 303 F. Supp. 2d 1259, 1268 (D. Utah 2004) (emphasis in original).  More recently, in a case in which the DOJ was less than diligent in seeking a victim's rights, the 11th Circuit noted that "although the petition does not seek relief against the Assistant United States Attorney prosecuting the case, we expect that attorney to be mindful of the obligations imposed by section 3771(c) of the [CVRA]." In re Stewart, 552 F.3d 1285, 1289 (11th Cir. 2008).

### B.    The Mandatory Victim Restitution Act

The CVRA explicitly confers a broad array of rights upon crime victims, including the right to full and timely restitution as provided by law. 18 U.S.C. §3771(a)(6).  Under the Plea Agreements, each Alcatel subsidiary will plead guilty to one count of violating 18 U.S.C. § 371.

---

[2] www.ojp.usdoj.gov/ovc, accessed 4/15/2011.

The MVRA makes restitution *mandatory* when a sentencing proceeding *or plea agreement* relates to charges for "*an offense against property under* [Title 18]...*including any offense committed by fraud or deceit*." 18 U.S.C. § 3663A(c)(1)(A)(ii) (1996) (emphasis added).  Courts have unfailingly followed the plain language of the statute in ordering restitution for Title 18 crimes.  See Brennan, 526 F. Supp. 2d. at 383 ("Conspiracy to commit a substantive crime under Title 18 or a conspiracy to commit a crime under Title 18 for a substantive crime under a different title, makes restitution *mandatory* under section 3663A.") (original emphasis).

A guilty plea to a Title 18 offense subjects a defendant to mandatory restitution in the full amount of each victim's losses. Dickerson, 370 F.3d at 1336; U.S. v. Rini, 2007 WL 1198448, at 846 (11th Cir. 2007) ("A district court has limited discretion in calculating restitution and must order restitution to each victim in the full amount of each victim's losses for, *inter alia,* crimes against property.") (internal quotations omitted).  The Alcatel subsidiaries each pled guilty to a violation of 18 U.S.C. § 371, so these guilty pleas mandate an award of restitution. See U.S. v. Elson, 577 F.3d 713, 723 (6th Cir. 2009) ("if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction."). Courts have unfailingly approved the award of restitution for convictions under 18 U.S.C. § 371, even when the defendant conspired to commit a violation under another Title. Brennan, 526 F. Supp. 2d at 383; see also United States v. Quarrell, 310 F.3d 664, 677 (10th Cir. 2002) ("However, the Quarrells were also convicted of conspiracy under 18 U.S.C. § 371, which is an offense under Title 18. The Quarrells' conspiracy conviction satisfied the "under this title" requirement of the MVRA."); United States v. Helmsley, 941 F.2d 71, 101 (2d Cir. 1991) (restitution appropriate where defendant was convicted of conspiracy and Title 26 offenses because conspiracy is a separate crime from the underlying predicate act, and nothing in the statute limits the court's power to order restitution for such an offense).

Congress enacted the MVRA "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due." S. Rep. 104-179 at 15 (1996).  Restitution is proper under the MVRA to any victim for "an offense against property under [Title 18], ... including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii); United States v. Browne, 505 F.3d 1229, 1282 n.36 (11th Cir. 2007).  While nearly identical to the VWPA, the MVRA does not afford courts discretion in sentencing those convicted of

4

enumerated crimes.  The "MVRA obligates the Court to order restitution." U.S. v. Dickerson, 370 F.3d 1330, 1336 (11th Cir. 2004).  Courts have taken notice of this distinction. See United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000) (in ordering restitution, "the MVRA makes no provision for the trial court to exercise its discretion."); United States v. Jones, 289 F.3d 1260, 1265 (11th Cir. 2002) ("The MVRA mandates that a sentencing court order restitution in the full amount."); United States v. Rothstein, 2010 WL 966647 (S.D. Fla. 2010) ("[R]estitution is mandatory in sentencing for all convictions of crimes as more particularly set forth in the [MVRA]").  Such restitution must be in the full amount of each victim's losses and without consideration for the defendant's economic circumstances.  18 U.S.C. § 3664(f)(1)(A), (2002); Dickerson, 370 F.3d at 1336.

## II.     ICE is a victim of Alcatel's fraud and entitled to restitution.

The MVRA requires restitution for an identifiable victim who has suffered a pecuniary loss because of a Title 18 offense.  18 U.S.C. § 3663A(c)(1)(B).  The MVRA defines a victim as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Id. § 3663A(a)(2).  A victim must be both directly and proximately harmed by the conduct underlying the offense.  Id.  "[T]he acts comprising the scheme to defraud therefore constitute the conduct underlying the offense of conviction and establish the outer limits of the restitution order."  U.S. v. Henoud, 81 F.3d 484, 489 (4th Cir. 1996).  The Informations filed against the Defendants contain a detailed description of their conspiracy to conduct a world-wide bribery scheme.  This included using bribes to procure hundreds of millions of dollars in lucrative telecommunications contracts from ICE.  The scheme, the contracts, and the subsequent unraveling of the scheme directly damaged ICE.  ICE is referred to frequently in the Informations, and these damages were a direct and proximate result of the Defendants' conduct.  While ICE is not denominated a victim in the Informations, it is clear that it was both a target and victim of Alcatel's bribery scheme and is clearly entitled to the rights afforded a "victim".  It is universally recognized, in a scheme for bribery, that an entity whose employees accept improper benefits to affect corporate decisions is a victim.  Such conduct was fraudulent and

harmed ICE; it did not confer any benefit.[4]

### A. ICE has Been Directly and Proximately Harmed by the Defendants' Crimes.

The touchstone for determining whether restitution is appropriate centers on whether the damages alleged were a direct and proximate result of the defendant's criminal conduct. Here, Alcatel paid millions of dollars in bribes to obtain lucrative contracts with obligations it never satisfied, services it never rendered, and hardware that was inferior to what was promised or never delivered. In holding that victims are entitled to restitution for the harm they suffer from criminal conduct, courts have identified, among others, the following bases for restitution.

#### 1. The Amount of Bribes Paid is Awardable as Restitution

The victim of a bribery scheme is entitled to restitution for the amount of bribes paid. ICE entered into a series of contracts with Alcatel, totaling hundreds of millions of dollars, to upgrade its telecommunications infrastructure. Alcatel obtained these contracts by paying approximately $18 million in illegal bribes. Every dollar paid by Alcatel bribes as to five former ICE employees or directors deprived ICE of their honest services. See U.S. v. Woodard, 459 F.3d 1078, 1087 (11th Cir. 2006) (awarding restitution to city when police officer devised scheme to defraud city of property and honest services of police officer). As the Eleventh Circuit explained in McNair, when a public official accepts bribes and abrogates his or her duty to provide honest services to the government, it is the government that suffers losses in the form of the addition of the amount of those bribes to the contract in question. U.S. v. McNair, 605 F.3d 1152, 1221 (11th Cir. 2010); see also U.S. v. Carter, 217 U.S. 286, 305-06 (1910) (stating that when a public official acquires an ill-gotten benefit as a result of his office, the government suffers losses in that amount.). As explained in McNair, Alcatel's bribes were added to the contracts as a cost of doing business, and are recoverable by ICE as restitution.

#### 2. The Supply of Both Inferior and Over-Priced Products and Services Mandates Restitution

When Alcatel walked away, ICE was left with an unfinished and largely inoperable telecommunications network. It also subsequently discovered that Alcatel had supplied inferior equipment causing ICE to bear the substantial additional expense of procuring those services

---

[4] Williams Elec. Games, 366 F.3d at 575 (company was victim when an employee was paid bribes to purchase from bribe payors); U.S. v. Rybicki, 354 F.3d 124, 139 (2d Cir. 2003) ("In the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment."); U.S. v. McNair, 605 F.3d 1152 (11th Cir. 2010) (entity employing individuals accepting bribes was victim).

from other providers.  Millions of dollars in illegal profits reaped by Alcatel through its admitted criminal conduct were effectively paid by ICE.

Courts have also approved a wide degree of flexibility in awarding restitution for losses directly and proximately resulting from criminal conduct.  In United States v. Kamuvaka, 719 F. Supp. 2d 469 (E.D. Pa. 2010), the government moved for restitution as a result of entering into a contract with a private contractor, alleging that the services provided under the contract were grossly underperformed or not performed at all.  The court agreed, finding that the government did not receive anything close to value paid for those services. Id. at 481.

        3.     Business Interruptions and Related Losses are Subject to Restitution

ICE experienced and continues to experience interruption and inoperability because of the inferior services and equipment provided by Alcatel.  As a direct result, ICE has been forced to incur significant expenses to rectify this situation.  ICE is entitled to restitution for these expenses. U.S. v. Gordon, 393 F.3d 1044, 1057 (9th Cir. 2004) (pre-judgment interest available to corporation as a proxy for lost opportunity); U.S. v. Scott, 2009 WL 983032, at 72 (2d Cir. 2009) (restitution included investment earnings on what would have accrued as of the date of sentencing).

        4.     The MVRA Provides Restitution for Expenses Incurred as a Result of the Discovery of the Fraud.

The plain language of the MVRA gives the district court discretion to award lost income and other expenses incurred during participation, investigation, prosecution, and attendance at criminal proceedings.  18 U.S.C. § 3663A(b)(4).  Courts have awarded restitution under this language for a variety of expenses.  See U.S. v. Donaghy, 570 F. Supp. 2d 411, 433 (E.D.N.Y. 2008) (NBA entitled to restitution for attorneys' fees); U.S. v. Amato, 540 F.3d 153, 159 (2d Cir. 2008) (expenses awarded to victim for participation in investigation and prosecution and attendance at proceedings); U.S. v. Cummings, 281 F.3d 1046, 1052 (9th Cir. 2002) (restitution awarded for attorney's fees incurred in related civil proceeding); Gordon, 393 F.3d at 1057 ("Generally, investigation costs-including attorneys' fees-incurred by private parties as a direct and foreseeable result of the defendant's wrongful conduct may be recoverable.").

Alcatel's massive bribery and corruption scheme involved numerous individuals and business entities in various countries on several continents.  Once discovered, Alcatel sought to conceal its scheme through another complex attack on several of its *own* employees and

apparently, based on the position now espoused by the DOJ, ICE and its personnel.[5] Accordingly, ICE is entitled to restitution for damage it incurred in accordance with 18 U.S.C. §3663A(b)(4). Those damages include but are not limited to, lost income expenses incurred in determining the amount of loss suffered, attorney fees expended in its investigation, prosecution, and attendance at the criminal proceedings, as well as any other relief this Court deems appropriate.

### B. Restitution to ICE is Mandatory Under the MVRA Despite the Government's Objection

Despite the DOJ's incomprehensible refusal to recognize ICE as a victim[6], this Court is bound by the MVRA, which *requires* a court, when sentencing a defendant, to order the defendant to make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1).

U.S. v. Gamma Tech Industries, Inc. addressed a similar situation in which the victim of a bribery scheme sought restitution despite the opposition of both the Government and defendants. 265 F.3d 917 (9th Cir. 2001). Pacific Ship Repair & Fabrication, Inc. ("Pac Ship") contracted with the Navy to repair aircraft carriers based in California. Stanley, an employee, oversaw Pac Ship's contracts with subcontractors, and arranged to receive kickbacks. Id. at 921. Stanley was later indicted along with several subcontractors on charges of conspiracy. 18 U.S.C. § 371. Each defendant entered into a plea agreement with the government, although *none* of the underlying agreements provided for restitution to any victim. Id.

At the sentencing hearing, Pac Ship asked to be heard regarding restitution, although neither the Government nor the presentence report had identified Pac Ship as a victim. Id. at 922. The district court delayed sentencing and allowed Pac Ship to make a formal request for restitution. Despite the Government and defendants' opposition, the district court allowed Pac Ship to present evidence concerning its alleged losses and restitution.

On appeal, the defendants and the government argued that only the government and/or probation office can identify victims and make recommendations for restitution. The Ninth

---

[5] Interestingly, while Alcatel effectively seeks to avoid liability entirely by shifting fault to its "rogue employees" and several subsidiaries, the Department has summarily concluded that the conduct of two ICE employees and three ICE directors corrupted by Alcatel somehow makes all of ICE's 16,500 employees, its management and the government of Costa Rica participants in Alcatel's scheme.

[6] Indeed, courts interpreting the "direct and proximately" requirement of causation have awarded restitution in scenarios far more attenuated than the events at issue in this case. See U.S. v. Hackett, 311 F.3d 989, 992-93 (9th Cir. 2002) (Awarding restitution to insurance company for damage caused by fire started by chemicals used in methamphetamine manufacture by co-defendant); U.S. v. Peterson, 538 F.3d 1064, 1077 (9th Cir. 2008) (Finding that despite "multiple links in the causal chain, the Petersons directly and proximately caused the losses to HUD.").

Circuit held that the clear language of the MVRA provides that the district court may order a defendant to make restitution to *any* victim of the defendant's offense, rather than only those identified by the government, and affirmed the district court's holding that Pac Ship was a victim and entitled to restitution.

The parallels between <u>Gamma Tech</u> and the instant case make clear that ICE, as a victim of a scheme involving kickbacks[7] to obtain contracts, is entitled to restitution.  Alcatel paid bribes exceeding $18 million to secure lucrative telecommunications contracts from ICE valued at over $300 million dollars. All of these contracts were the direct and proximate consequence of Alcatel's admitted criminal enterprise to defraud ICE and gain for itself huge illegal profits. Under the MVRA, ICE is entitled to restitution for all losses it incurred from these crimes.

### C.      The Definition of a Victim is Afforded a Broad Meaning

In determining the scope of the MVRA's definition of a victim, courts have looked to the definition of "person" in the Dictionary Act, which states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1 (1948).  Under this interpretation, courts have awarded restitution to a broad array of victims under the MVRA.  <u>See</u> <u>U.S. v. Bogart</u>, 490 F. Supp. 2d 885, 893 (S.D. Ohio 2007) (awarding restitution to insurance company); <u>Gordon</u>, 393 F.3d at 1059 (awarding restitution to technology company); <u>United States v. Amato</u>, 540 F.3d 153, 159 (2d Cir. 2008) (awarding restitution to data company); <u>United States v. Watlington</u>, 287 F. App'x. 257, 268 (4th Cir. 2008) (awarding restitution to financial institution); <u>United States v. Phillips</u>, 477 F.3d 215, 224 (5th Cir. 2007) (awarding restitution to educational institution); <u>United States v. Washington</u>, 434 F.3d 1265, 1269 (11th Cir. 2006) (awarding restitution to condominium association); <u>United States v. Brock-Davis</u>, 504 F.3d 991, 998 (9th Cir. 2007) (awarding restitution to hotel owner).

Courts have also overwhelmingly affirmed that governments are included in the MVRA's definition of a victim and entitled to restitution.  This definition includes both governmental bodies and agencies.  <u>See</u> <u>U.S. v. Pasquette</u>, 201 F.3d 40 (1st Cir. 2000) (town was victim); <u>U.S. v. Ekanem</u>, 383 F.3d 40, 43 (2d Cir. 2004) (government included in definition of victim); <u>Kalani</u>

---

[7] Paragraphs 49 of the Plea Agreements and Informations detail kickbacks to Alcatel employees from "consultants" in Costa Rica.

v. U.S., 2002 WL 31453094 (S.D.N.Y. 2002) (medicare was victim); U.S. v. Donaby, 349 F.3d 1046 (7th Cir. 2003) (police department was victim); U.S. v. Caldwell, 302 F.3d 399 (5th Cir. 2002) (governmental entity "created by state statute and funded by state bonds" was victim); U.S. v. Senty-Haugen, 449 F.3d 862 (8th Cir. 2006) (IRS was victim).

Notably, foreign governments have also been found to be victims and awarded restitution under the MVRA on multiple occasions, including in the context of Foreign Corrupt Practices ("FCPA") enforcement actions.  The definition extends to foreign governments and agencies as well.  See Pasquantino v. U.S., 544 U.S. 349 (2005) (Canada entitled to restitution); U.S. v. Bengis, 631 F.3d 33 (2d Cir. 2011) (South African government was victim entitled to restitution); U.S. v. Kenny Int'l Corp., Cr. No. 79-372, (D.D.C. 1979) (ordering restitution to Cook Islands government as a result of guilty plea to bribery for FCPA violation); U.S. v. F.G. Mason Eng'g, Inc. and Francis G. Mason, Cr. B-90-29 (D. Conn. 1990) (ordering restitution to the West German government as a result of guilty plea to conspiracy to violate FCPA); U.S. v. Diaz, No. 09-cr-20346-JEM, Dkt. 37 (S.D. Fla. Aug. 5, 2010) (defendant was ordered to pay restitution to Haitian government as a result of FCPA violations involving bribery of state-owned Haiti Telecommunications company).  As the Seventh Circuit remarked, there is no reason why a government agency should not recover its losses from criminal conduct absent an explicit statutory directive to that effect. Martin, 128 F.3d at 1191.

Bengis awarded restitution to South Africa.  Defendants pled guilty to several offenses, including conspiracy under 18 U.S.C. § 371, as part of a scheme to illegally harvest seafood from South Africa.  631 F.3d at 33.  The court disagreed with the district court's conclusion that South Africa was not a 'victim':

> The defendants' conduct facilitated the illegal harvesting of the lobsters by providing access to the United States market and enabled the poaching to go undetected by the South African government by, for example, off-loading the overharvested lobster at night, under-reporting catch amounts to South African authorities, bribing officials, and submitting false export documents.  In doing so, *the defendants' criminal conduct "directly harmed" the South African government, which in turn makes South Africa eligible for restitution under the VWPA and MVRA.*

631 F.3d at 41 (emphasis added).  The court held South Africa was indeed a 'victim' for purposes of restitution, and that an award of restitution was proper under the MVRA. Id.  The court did *not* find that the bribery of government officials somehow turned the victim into a participant in the scheme. Unquestionably, ICE qualifies as a victim.

II.   **The DOJ has no Legal or Rational Basis for Its Failure to Protect ICE as a Victim in Violation of Federal Law**

It is important to note that the DOJ has failed to undertake *any* investigation to support its misplaced conclusions about ICE, Costa Rica, and lesser-developed nations in general.  As discussed below, the DOJ's position does not withstand any level of scrutiny because it is built on the false premise long abandoned by most developed nations – that all lesser developed countries are corrupt and all businesses in those countries are likewise corrupt.[11]  Here, it is clear the DOJ adopted that view early on and cannot logically support its wholesale failure to satisfy its statutory obligations to ICE or its attempts to circumvent the law by crafting agreements that are substantively insufficient under the law.

To that end, here the DOJ has continued to rely on a purported "policy" refusing to recognize foreign governments and their instrumentalities as victims.  First, ICE is in fact an autonomous entity with an independent board and management; it is not a "government." Second, there exists absolutely no published evidence such a policy even exists.  Third, even if such a "policy" exists and even if ICE is a "government," which it is not, as discussed above, numerous reported decisions recognize foreign governments and their instrumentalities as victims in cases similar to this one and ordered restitution.

    A.    **ICE is an autonomous entity with an independent board of directors and management**

ICE is an autonomous legal entity responsible for providing electrical power and telecommunications services in Costa Rica.  The organizational statute and subsequent decrees provide for the absolute autonomy of ICE.  This includes a seven-member, independent Board of Directors appointed by the Costa Rican Government who serve six-year terms.  They cannot be removed absent malfeasance.  These Directors include engineers, accountants, and lawyers with distinct areas of expertise.   None of the Directors are affiliated with the Costa Rican Government.  The Board of Directors appoints and oversees the management and operation of ICE in a manner similar to other large corporations.

    B.    **The DOJ's Alleged "Policy" Precluding ICE From Being Recognized as a Victim Simply Does not Exist**

Despite repeated requests by ICE for *any* evidence of the purported "policy", the Department has been unable (or unwilling) to provide it.  A search of the DOJ's website and other public domains yielded no evidence of any such policy.  No such "policy" actually exists.  Even if it

---

[11] See Appendix Ex. V.

did, it would be purely arbitrary and capricious, and intended solely to avoid the legal requirements and congressional mandate underlying 18 U.S.C. 3771. And, in any event, whether such a "policy" exists is ultimately irrelevant. The relevant question is whether that "policy" complies with law. As shown in this memorandum, it does not.

Assuming for the sake of argument that the "policy" exists, it is wholly devoid of legal support. On the contrary, rational analysis fully supports the idea of restitution to foreign sovereigns. See Kenneth B. Meyer, Restitution and the Lacey Act: New Solutions, Old Remedies, 93 Cornell L. Rev. 849, 864 (2008) ("By passing the VWPA and MVRA, Congress intended to broaden the age-old restitution remedy existing at common law and ensure that courts apply it consistently. Clear legislative intent and the broader deterrence goals discussed in Pfizer justify awarding restitution to foreign states, provided that a defendant's crimes directly and proximately harmed the foreign state.").

## III. The Assertion that ICE was a Participant in Alcatel's Scheme as a Result of Employees Accepting Bribes From Alcatel lacks any rational legal basis.

The notion that acceptance of bribes by five of ICE's more than 16,500 employees, managers, and directors necessarily renders ICE an active participant in Alcatel's admitted bribery scheme is nonsense. Common sense dictates that if such conduct was indeed authorized by ICE, as the DOJ maintains, then there would be no bribery. Instead, there was bribery and ICE suffered massive harm as a result.

### A. The DOJ's Position is in Stark Contrast to Fundamental Agency Theory

A dishonest agent who deprives his principal of a corporate opportunity for the agent's benefit is deemed to be acting outside the scope of his employment. Williams Elec. Games, Inc. v. Garrity, 366 F.3d 569, 575 (7th Cir. 2004) ("an agent's knowledge is not imputed to his principal when the agent is acting adversely to the principal"). The agent's acts cannot therefore be attributed to the principal. In re Felt Mfg. Co., Inc., 371 B.R. 589, 610 (Bankr. D.N.H. 2007) ("However, when wrongful acts are committed against a corporation by its officers and directors, the wrongful nature of such acts is not imputed to the corporation."). The 5 ICE directors and employees who secretly accepted bribes for their own benefit were clearly acting for their benefit and not for ICE's. Again, ICE suffered massive damages.

Alcatel's employees, on the other hand, acted in accordance with Alcatel policy and engaged in criminal conduct sanctioned by their principal (Alcatel), for Alcatel's benefit. The DOJ's attempt to characterize ICE and Alcatel as similarly situated is offensive and patently

disingenuous.  It is contrary to the most fundamental concepts of principal/agency law, concepts well known to any lawyer even of the tenderest years.  Notably, months ago ICE asked the DOJ for legal support; none has been proffered.  It is inconceivable that the DOJ can base its conclusions on any recognized legal principal.

> **B.**     **The DOJ's Unsupported Conclusion that ICE was a Participant is the Product of the Same Imperialist View of Latin America, the Caribbean and Lesser-Developed Nations That Spawned Alcatel's Fraudulent Scheme**

With neither a discernible announcement of a pertinent "policy" nor legal or factual support, the DOJ is left to rationalize its efforts to prevent ICE from obtaining restitution by a position that ICE is corrupt because of stereotypes about Latin America and lesser-developed nations.  This position, however, contradicts the position taken by the government in a recent Pennsylvania case:

> "This problem, as the Government ultimately phrases it, distills to an abiding one that Western experience has faced since ancient times, and that is the issue of whether the good should be penalized because of the bad, even when the unrighteous may be in the majority.  Surely our jurisprudence and the MVRA in particular exists to protect the righteous, whether ten or more conscientious public servants or the thousands of taxpayers -- not all "contented" -- who support them."

Kamuvaka, 719 F. Supp. 2d at 469.

Further, the DOJ's position ignores (1) the undisputed facts of the case demonstrating the lack of any benefit conferred upon ICE, (2) the significant damages incurred by ICE as a result of the scheme, and (3) the action taken by ICE upon learning that employees accepted bribes.

ICE did not receive any benefit from the bribed employees' criminal conduct.  To the contrary, it was deprived of the opportunity to obtain fairly negotiated contracts for goods and services.  Nor did ICE ratify or ignore the scheme once discovered.  The bribes were not paid to ICE, but to the personal account of each bribed employee by purported "consultants" purposely used by Alcatel to escape detection by ICE.  As the Supreme Court remarked in Carter over one hundred years ago, when a public official acquires an ill-gotten benefit as a result of his office, the government suffers losses in that amount.  217 U.S. at 305-06.

Alcatel's criminal conduct has resulted in significant losses to ICE.  ICE paid well in excess of the market for the goods and services Alcatel agreed to provide.  What Alcatel ultimately did provide was inferior and failed to perform as specified under the contract. As a result, ICE had to purchase additional equipment and remedial services to ameliorate the

13

widespread deficiencies. ICE has suffered losses in excess of $100 million – hardly consistent with the DOJ's characterization of ICE as a participant in Alcatel's admitted scheme. Finally, upon learning that employees accepted bribes, ICE took swift action to terminate them, and criminal proceedings have been instituted.

**IV.    The Agreements Submitted by the Alcatel Defendants and the DOJ Fail to Satisfy the Fundamental Requirements of the law.**

The Plea Agreements and Deferred Prosecution Agreement should be rejected, as each agreement fails to satisfy the legal standards required for approval by the court. The decision whether to accept a plea agreement rests within the sound discretion of the district court. Flowers v. U.S., 2009 WL 4730598, *8 (M.D. Fla. 2009); see also Santobello v. New York, 404 U.S. 257, 262 (1971) ("A court may reject a plea in exercise of sound judicial discretion."). In order to accept a plea agreement, the trial court must be satisfied that that the plea agreement meets several standards. The plea must be in the best interests of justice. Government of the Virgin Islands v. Walker, 261 F.3d 370, 375 (3d Cir. 2001). Additionally, the plea agreement must serve the public's interest. See in re Vasquez-Ramirez, 443 F.3d 692, 698 (9th Cir. 2006) (rejection of a negotiated plea agreement appropriate "when the court believes a sentence is too lenient or otherwise not in the public interest."). A plea agreement may also be rejected when acceptance would undermine the sentencing guidelines and would not adequately punish the defendant's criminal conduct. U.S. v. Greener, 979 F.2d 517, 520 (7th Cir. 1992).

Likewise, the use of a deferred prosecution agreement, allowing a suspension of the time limits in which an indictment is filed, may be used, upon judicial approval, to allow the defendant to demonstrate its good conduct. 18 U.S.C. § 3161(h)(2) (1975). Per the wording of the statute, use of a deferred prosecution agreement is expressly contingent on judicial approval. Thus, this Court may, in its sole discretion, reject a deferred prosecution agreement when such agreement would not be consistent with allowing the demonstration of good character. The DOJ has addressed prosecution of business organizations in a memo written on August 28, 2008 by then-Deputy Attorney General Paul McNulty (the "McNulty Memo"). See Appendix Exhibit Y. The McNulty Memo provides guidance, stating that "in the corporate context, punishment and deterrence are generally accomplished by substantial fines, *mandatory restitution*, and institution of appropriate compliance measures, including, if necessary, continued judicial oversight or the use of special masters" (emphasis added). It also sets considerations for deciding whether a target should be charged or considered for a deferred prosecution agreement, including the

pervasiveness of wrongdoing within the company, the company's history, and the adequacy of the prosecution of individuals responsible for the conduct.  Exhibit Y, p.4.

The DOJ and Defendants present for this Court's approval plea agreements that (1) include a guilty plea to a single count, (2) are based on flawed methodology for determining the appropriate sentencing guidelines, (3) fail to account for victim losses or restitution, (4) fail to apportion responsibility to any officers or directors of Alcatel (except for Christian Sapsizian, whose cooperation allowed the DOJ to unveil the true nature and scope of Alcatel's crimes), (5) place primary sanctions on faceless subsidiaries with virtually no business consequences for Alcatel-Lucent, (6) waive a pre-sentence report upon which the Court could order restitution, and (7) impose fines that are less than the amount of restitution required under the MVRA and that seem to levy the entire financial burden on public shareholders.  In light of these deficiencies, acceptance of the Plea Agreements would not be in the best interests of justice, nor would they serve the public's interest.  Walker, 261 F.3d at 375; Vasquez-Ramirez, 443 F.3d at 698. Further, and even more shocking, Alcatel has already violated the express terms of the Agreements by making false and misleading statements regarding the true nature of its scheme.

A.    The Plea Agreements fail to reflect the actual offense conduct.

While the charging documents demonstrate the extensive criminal acts perpetrated over the past two decades, this Court is now asked to accept  guilty pleas by three Alcatel subsidiaries to a single count of conspiracy to violate the FCPA.  The reference in the Plea Agreements to the Defendants' criminal conduct surely cannot substitute for the requirement that a plea agreement should adequately reflect the actual offense conduct.  See Greener, 979 F.3d at 521 ("The district court correctly considered the agreements' impact on the sentencing guidelines and the statutory purpose of sentencing and found that the agreements failed to adequately reflect the defendant's actual offense conduct.").  Indeed, the allegations contained in the Information against the Defendants clearly outline conduct that would support far more serious charges including mail and wire fraud, money laundering, racketeering, and securities law violations.  Additionally, many high-ranking executives either knew or willfully ignored the fact that these violations occurred, and instead allowed these practices to continue for decades, with the payment of millions of dollars throughout the world in bribes resulting in hundreds of millions of dollars of

15

illegally obtained telecommunications contracts.  None of them have been charged.[15]  Moreover, the Defendants now seek to pay a monetary fine that in itself is less just one of the multiple contracts entered into with ICE as a result of bribes.  Such a result is perplexing at best.  It also gives a not so subtle nod to Alcatel's business model, predicated on the notion that crime *does* pay.  So long as the consequence of the misconduct is less than the profit, the strategy makes sense.  Until the interests of justice are addressed, the agreements do not merit acceptance.

      **B.**    **The Methodology Used in Calculating the Sentencing Guidelines is Flawed and Fails to Account for Victim Losses**

The DOJ's calculation of the applicable Sentencing in the Deferred Prosecution Agreement contains fundamental flaws that warrant this Court's attention.  For instance, the DOJ has chosen to use the Alcatel Defendants' pecuniary gain as the metric for calculating the base offense level, despite the explicit instruction in U.S.S.G. § 2B1.1 that the base offense level should be calculated using the victim's loss.  The DOJ fails to provide any explanation as to why it elected not to use the loss suffered by the victims.[16]  Had the DOJ conducted any investigation to determine the amount of ICE's losses, it would have discovered that ICE's losses were significantly higher than $20 million, and that an upward departure was warranted.

The DOJ also fails to adhere to specific guidance in the Sentencing Guidelines for cases involving procurement fraud.  Note 3(B)(v)(II) to the Sentencing Guidelines provides that, in calculating the amount of loss, any "increased costs to procure the product or service involved that was reasonably foreseeable" should be included.  ICE was forced to procure products and services as a result of the inferior and defective equipment supplied by Alcatel.  In addition to the damages resulting from a largely inoperable system, ICE incurred direct costs to procure equipment from another supplier.  These additional costs should have been included in the calculation of the victim's loss under §2B1.1(B)(1).  See U.S. v. Wilkinson, 590 F.3d 259, 270 (4th Cir. 2010) (holding that government was not required to prove that government employees worked overtime in resoliciting bids and reawarding non-tainted contracts in order for government to have suffered an actual pecuniary loss in the form of administrative costs that

---

[15] See Exhibit Y, p. 4. (Noting that one of the factors to be considered in charging a corporation or negotiating plea agreements is the adequacy of the prosecution of individuals responsible for the corporation's malfeasance.)

[16] While the Sentencing Guidelines do allow for the gain resulting from the offense as an alternative measure of loss, such substitution is allowed only if the loss cannot be reasonably determined.  Moreover, this language is not included in the Sentencing Guidelines themselves, but rather in the commentary, suggesting Congressional intent to use loss as a determinant.  Commentary to U.S.S.G. § 2B1.1 at 3(B).

would warrant sentencing enhancement under the Sentencing Guidelines.)  Yet, due to the DOJ's unexplained failure to calculate the victim's loss, these additional costs were not included.  The DOJ's errors in calculating the Sentencing Guidelines are clearly not harmless.[17]  For these reasons, the Deferred Prosecution Agreement should be rejected.

### C.    The Agreements do not Punish Any Officers or Directors of the Alcatel Defendants Despite the Frequent Reference to Their Criminal Conduct.

Despite the frequent references in the Informations to the knowledge or willful ignorance of several high-ranking Alcatel executives, the only wrongdoers punished are the nameless corporate subsidiaries.  If approved, the Agreements allow the parent corporation to escape a criminal conviction altogether.  While the DOJ alleges that "senior executives at [the Alcatel subsidiaries], among others, knew bribes were being paid, or were aware of the high probability that many of these third-party consultants were paying bribes," not one prosecution has been brought as a result.  Def. Pros. Agmt. at A-14.  Thus, the only "punishment" meted by the Agreements is the payment by faceless corporate subsidiaries of monetary penalties well below what is required under the MVRA.  Such a result is neither in the best interests of justice nor does it adequately serve the public's interest. The failure to use the total loss and the additional costs incurred by ICE allowed Alcatel and the DOJ to show a lower total increase in the base offense level and achieve a lower total fine under the Sentencing Guidelines.

It should also be noted that the current DOJ's case against Alcatel was made possible, in large part, by the cooperation of Christian Sapsizian, one of the lower-level executives that Alcatel claims was entirely responsible for the scheme.  Because of this cooperation, the DOJ filed a 5K 1.1 motion on his behalf.  Conversely, the Defendants never offered a similar level of cooperation. In fact, in the Deferred Prosecution Agreement, the DOJ noted the Alcatel Defendants' "limited and inadequate cooperation for a substantial period of time".[18]

### D.    The Proposed Plea Agreements Seek to Avoid Mandatory and Routine Pre-Trial Services.

The Plea Agreements submitted by the DOJ are designed to sidestep the routine pre-sentencing investigation and report that would allow the Court to order restitution to the victims

---

[17] See U.S. v. Klein, 543 F.3d 206, 213 (5th Cir. 2008) ("An error in applying the guidelines is a significant procedural error that constitutes an abuse of discretion."); U.S. v. Delgado-Martinez, 564 F.3d 750, 753 (5th Cir. 2009) (application of improper enhancement and sentence imposed in bottom range of Sentencing Guidelines warranted remand).

[18] Not surprisingly, this "inadequate cooperation" dramatically improved around the same time that Sapsizian began his extensive cooperation with the Department.

of the criminal offenses admittedly perpetrated by the Defendants.  Under the agreements, ICE would not be entitled to any part of the $92 million fine despite estimated losses approaching $400 million; rather, the entire amount would go the United States Government, which neither claims nor alleges any loss from the conduct of the Defendants.  The request by the Defendants to waive a pre-sentence report and avoid an investigation by the Probation Office serves solely to avoid an award of restitution to ICE and the requisite level of scrutiny that is attendant to the disposition of a matter like this one  Indeed, the proposed fine of $92 million not only is less than just one single contract awarded to the Defendants by ICE, but also less than the amount of restitution that the waiver of a pre-sentence investigation and report would allow the Defendants to avoid.  Such a result seeks to avoid, rather than comply with, the best interests of justice, and should be rejected.

A Minnesota district court recently rejected a proposed plea agreement based on failure to address several critical issues.  In U.S. v. Guidant LLC, 708 F. Supp. 2d 903, 906 (D. Minn. 2010), the plea agreement did not address the possibility of restitution to victims of the offenses, lacked any provision for probation or a pre-sentencing report, and failed to specify the destination of the criminal penalties paid.  Addressing the absence of these factors, the court determined that acceptance of the plea agreement was not "in the best interests of justice and do[es] not serve the public's interests because they do not adequately address Guidant's history and the criminal conduct at issue."  Id. at 915.  The court noted its surprise that chapter eight of the Sentencing Guidelines, governing the sentencing of organizations, was not referenced or made a part of the plea agreement.  Id. at 918.  Citing the victims' view that Guidant did not respect the justice system and should be required to do more than simply pay fines for its criminal behavior, the court decided that probation was required for Guidant because of the nature of the criminal conduct, and ordered a presentence investigation and report to evaluate these suggestions or any additional conditions of probation.  Id. at 919.

The Plea Agreements submitted to this Court contain the same fatal omissions as those cited with disapproval by the Guidant court, including the failure to address a pre-sentencing investigation and report or restitution to victims.  This Court should therefore also conclude that acceptance of the Plea Agreements would not serve the best interests of justice or of the public. The Defendants have admitted to operating a worldwide bribery scheme that spanned several decades and had become ingrained in corporate culture.  Yet, the Plea Agreements seek to

remedy this conduct with the payment of a fine dwarfed by the company's revenues and the institution of a "compliance monitor" in France that essentially removes any oversight from the United States. The interests of justice and of the public cannot be served by such a position and a company whose conduct throughout the criminal justice process indicates its lack of respect for the criminal justice system and for those wronged by its criminal conduct.

### E.    The Defendants continue to violate the Agreements

Each of the Agreements contain provisions prohibiting the Defendants from making any statements contradicting their supposed acceptance of responsibility. Def. Pros. Agmt. at ¶21; Alcatel Centroamerica Plea Agmt. ¶20. Yet, on February 17, 2011, during closing arguments of a trial in Costa Rica against Miguel Angel Rodriguez and Does 1-99, the Defendants' attorney, Alejandro Batalla, made false statements concerning the nature of the Defendants' involvement in the admitted scheme. Excerpts of these statements are located in Appendix Exhibit X, and include the assertion that "[f]rom the beginning of this process in 2004, the company had no knowledge of the acts that were unfolded here in Costa Rica on the part of Edgar Valverde and Christian Sapsizian . . . instead, the company was a victim of these ex-employees." These statements clearly violate the letter, spirit, and intent of the Agreements. That conduct should eliminate any opportunity for a reduction in punishment under the Sentencing Guidelines.

Rather than warrant the reduction requested by the DOJ, the Defendants' conduct merits an enhanced sanction. See U.S. v. Puckett, 505 F.3d 377, 387 (5th Cir. 2007) ("Where a defendant has failed to withdraw from criminal conduct, the sentencing court may deny a reduction for acceptance of responsibility."); U.S.S.G. § 3E1.1 cmt. n. 1(b). Indeed, Sentencing Guideline § 3C1.1 mandates a two-level increase for willfully obstructing or impeding the administration of justice in the investigation or prosecution of such conduct. U.S.S.G. § 3C1.1. The Defendants' conduct throughout the DOJ's investigation and prosecution demonstrates a bold-faced refusal to accept responsibility for its criminal conduct.

### F.    A Delay in Sentencing is Justifiable to Prevent the Avoidance of Victims' Rights

Affording ICE mandatory victim's rights will not unreasonably delay sentencing in this matter. Already due to the actions of the DOJ and the Defendants, the presentation of this matter has been withheld from this Court for over a year. The agreements between the Defendants and the SEC or the DOJ were announced in Alcatel's public filings *over 14 months* ago. This announcement included the specific terms of the agreements and a separate agreement with the

SEC.  There is now absolutely no justification for Alcatel to assert that affording a victim mandated rights will cause any unwarranted delay.  This is especially true since the DOJ has failed and refused to provide appropriate notice and assistance to ICE.  ICE began contacting authorities shortly after the agreements were announced and has been rebuffed at every turn.

Only on Friday, April 29th was ICE contacted for the first time by a probation officer and provided with a form for submitting incurred damages.  Indeed, ICE was told that this form must be submitted immediately even though it had requested a victim number over a year ago and contacted the Probation Office months previously. Further, no notice of any kind was provided in connection with Sapsizian's plea in 2007.  The assertion that this matter should go forward absent or with expedited pre-sentence procedures to avoid delay is a patently transparent argument designed to ram through the DOJ's improper Agreements with the Defendants and to avoid appropriate judicial scrutiny and mandatory restitution that this matter demands.[20]

### Conclusion

In sum, the Defendants, with the DOJ's blessing, seek to disavow decades of admitted rampant corruption with the payment of a single fine that pales in comparison to both the enormous revenues received and the massive losses inflicted on victims.  The Plea Agreements and Deferred Prosecution Agreement currently before this Court not only fail to satisfy the best interests of justice or that of the public, but also lack fundamental assurances that the proposed punishment adequately reflects the Defendants' history or conduct.  The failure to address certain mandatory pre-trial services is not a harmless oversight, but rather part of a continuing theme involving the Defendants' lack of respect for the criminal justice system.   The Defendants victimized ICE, and the DOJ has failed to recognize ICE as a victim, despite  that the conduct admitted by the Defendants unequivocally directly and proximately harmed it.  by the Alcatel Defendants' crimes.  As such, ICE is entitled to restitution under the MVRA.  Based on these facts and the authorities referred to above, ICE respectfully requests this Court to order the remedies requested in its Petition.

---

[20] There has been no explanation of the delay of 10 months that occurred between Alcatel-Lucent's public disclosure of its agreement with the government and the filing of the plea agreements and DPA.  This served to keep unavailable the Informations, Pleas and DPA until after the close of evidence of criminal proceedings in Costa Rica, and allowed Alcatel-Lucent's attorney in that proceeding Alejandro Batalla to argue with presumed impunity that the actions in Costa Rica were solely the work of two low level employees and that Alcatel-Lucent was without knowledge of corrupt conduct and was blameless.

Respectfully Submitted,

s/ *George L. Guerra*
George L. Guerra
Florida Bar No. 0005762
gguerra@wiandlaw.com
Gianluca Morello, Esq.
Florida Bar No. 034997
gmorello@wiandlaw.com
Dominique H. Pearlman, Esq.
Florida Bar No. 0044135
dpearlman@wiandlaw.com
Jordan D. Maglich, Esq.
Florida Bar No. 0086106
jmaglich@wiandlaw.com
WIAND GUERRA KING P.L.
3000 Bayport Drive, Suite 600
Tampa, FL  33607
Tel. 813.347.5100
Fax 813.347.5155

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of May, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ George L. Guerra*
George L. Guerra (FBN: 0005762)