## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

                                              **CASE NO. 10-20906-CR-COOKE**

ALCATEL-LUCENT FRANCE, S.A.,
     f/k/a "Alcatel CIT, S.A.," et al.,

     Defendants.

_____/

UNITED STATES OF AMERICA,

     Plaintiff,

                                              **CASE NO. 10-20907-CR-COOKE**

v.

ALCATEL-LUCENT, S.A.,
     f/k/a "Alcatel, S.A.,"

     Defendant.

_____/

## VICTIM INSTITUTO COSTARRICENSE DE ELECTRICIDAD'S
## REPLY TO THE UNITED STATES OF AMERICA'S OPPOSITION TO ITS PETITION
## FOR RELIEF PURSUANT TO 18 U.S.C. § 3771(D)(3) AND OBJECTION TO PLEA
## AGREEMENTS AND DEFERRED PROSECUTION AGREEMENT

Instituto Costarricense de Electricidad ("ICE") is a victim of Defendants' criminal conduct under the Crime Victims Rights Act, 18 U.S.C. § 3771 ("CVRA"), and entitled to specific rights, including the right to reasonably confer with the Government.[1]  Separately, it is entitled to restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA").  Nothing in the U.S. Department of Justice's ("DOJ") response ("DOJ Response") (Case 10-20906 Doc. 45) to ICE's petition (the "Petition") (Case 10-20906 Docs. 22, 23) changes that.  ICE is a victim under the CVRA and because DOJ violated ICE's right to confer, the Rule (c)(1)(C) plea agreements between it and Defendants ("Plea Agreements") must be rejected.  And, as a victim of an offense that falls within the scope of the MVRA, ICE is entitled to restitution absent a finding that the MVRA's tightly circumscribed "complexity" exception applies.  As discussed below, that exception does not apply here.

## I.   ICE IS A "VICTIM" UNDER THE CVRA

The CVRA broadly defines "victim" as "a person [or entity] directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. § 3771(e).  The MVRA defines "victim" in the same manner, so a "victim" under both statutes includes one targeted by an offense involving a scheme, conspiracy, or pattern of criminal activity.  *See U.S. v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 462 (D.N.J. 2009); 18 U.S.C. § 3663A(a)(2).[2]  ICE has submitted substantial evidence and legal authority establishing that it was proximately harmed by Defendants' criminal conduct (*see* Pet. at 5-7), and DOJ (nor Defendants) appears to contest this.  Instead, it contends that ICE was a "co-participant" of Defendants' crimes and thus should be denied victim status.  (DOJ Resp. at 6-13;)  This contention, however, fails because (1) as a matter of law, ICE cannot be imputed with the conduct of its few personnel who accepted Defendants' bribes; and (2) ICE did nothing to warrant a label of "co-participant."

---

[1] ICE incorporates by reference herein all applicable arguments made in its Reply to Defendants' Opposition to its Petition for Relief Pursuant to 18 U.S.C. § 3771(d)(3) and Objection to Plea Agreements and Deferred Prosecution Agreement.

[2] Under this broad interpretation of the "victim," courts may award restitution to all individuals defrauded by the defendant's "entire scheme" or conspiracy offense, not just those defrauded in the specific offense counts to which a defendant admits guilt. *U.S. v. Bold*, 412 F. Supp. 2d 818, 827 (S.D. Ohio 2006); *U.S. v. Ross*, 210 F.3d 916 (8th Cir. 2000); *U.S. v. Liner*, 435 F.3d 920, 926 (8th Cir. 2006); *U.S. v. DeRosier*, 501 F.3d 888, 897 (8th Cir. 2007).

1. <u>As A Matter Of Law, ICE Was Not A "Co-participant" In Defendants' Scheme</u>

DOJ (and Defendants) ignore fundamental tenets of agency law when arguing that <u>ICE itself</u>, rather than only its handful of personnel who accepted the bribes for their own benefit, was a "co-participant" in the crimes.  ICE's proof establishes those actions of three former directors and two former employees (out of over 16,000 directors and employees) were solely for those individuals' benefit and provided no benefit to ICE; indeed, they caused great harm to ICE. Accordingly, as a matter of law those actions cannot be imputed to ICE.  An agent's authority to act in that capacity is terminated when the agent ceases to act for the benefit of the principal and instead acts for its own benefit.  Restatement (Second) of Agency § 396(b); *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1197 (D.N.J. 1992).  In other words, an agent's conduct cannot be imputed to its principal when the agent is acting in its own interests and adversely to the interests of the principal.  *See In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 242 (S.D. Fla. 2010) (when "agent's misconduct is calculated to benefit the agent and harms the corporation, the agent has forsaken the corporation and acts only for himself"); *LanChile Airlines v. Conn. Gen. Life Ins.*, 759 F. Supp. 811, 814 (S.D. Fla. 1991); *Munroe v. Harriman*, 85 F.2d 493, 495 (2d Cir. 1936) ("Where an agent, though ostensibly acting in the business of the principal, is really committing a fraud, for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it."); *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d DCA 2003).

The law is clear that agents who accept bribes or kickbacks operate for their own benefit and to the detriment of their principals, and restitution to the principals is warranted.  *See Gamma Tech Ind., Inc.*, 265 F.3d at 926 (awarding restitution to contractor as victim of conspiracy to provide and receive kickbacks on contracts); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004) (discussing remedies available to "victim of commercial bribery, who usually as here is the principal of an agent who was bribed"); *Skilling v. U.S.*, 130 S. Ct. 2896, 2926-27 (2010) ("When one tampers with [the employer-employee] relationship for the purpose of causing the employee to breach his duty, he in effect is defrauding the employer of a lawful right.  The actual deception that is practiced is in the continued representation of the employee ... that he is honest and loyal to the employer's interests."); *U.S. v. Liu*, 200 Fed. Appx. 39 (2d Cir. 2006) (restitution awarded to bank whose official accepted bribes); *U.S. v. Gaytan*, 342 F.3d 1010, 1012 (9th Cir. 2003) (affirming restitution to city whose

former official accepted bribes).[3]

Every commercial bribery episode has dishonest individuals who dishonor and violate the trust accorded to them by their employers so they can channel business in return for payments. But this does not mean the bribe recipient's employer was involved. Here, DOJ (and Defendants) completely ignore this critical legal rule. It does this for good reason: there is no evidence whatsoever to impute ICE's former board members' and officials' actions to the company. As a matter of law, ICE was not a participant in Defendants' criminal scheme.[4]

> 2. Contrary To DOJ's Assertion, ICE's Position Relative To Defendants' Is Materially Different

Apparently conceding the five bribe recipients formerly associated with ICE accepted the money for their own – not ICE's – benefit, DOJ (and Defendants) resort to arguing that ICE should be responsible for their conduct, just as Defendants are responsible for the corrupt conduct of its agents, because the five individuals were directors and officers of the company. (DOJ Resp. p. 7-9; Def. Resp at 5.) This argument, once again, ignores the law and the facts. With respect to the law, as detailed above, there is no basis to impute those individuals' actions to ICE, and DOJ (nor Defendants) cites any case showing otherwise.

With respect to the facts, the relative position of Defendants and ICE is materially and vastly different, especially as it applies to factors relevant to agency. Defendants' agents acted in furtherance and for the benefit of their principals (*i.e.*, the Alcatel-Lucent entities) as they procured business throughout the world for Defendants. Further, as admitted by Defendants, they had a corrupt corporate culture for securing business, which, among other things, involved participation of high-level officials, widespread internal knowledge, a corporate policy of retaining so-called "consultants" around the world to locate bribe recipients and facilitate

---

[3] *See also U.S. v. Lovett*, 811 F.2d 979, 985 (7th Cir. 1987); *U.S. v. George*, 477 F.2d 508, 513 (7th Cir. 1973); *In re Salem Mills, Inc.*, 881 F. Supp. 1109, 1116-17 (N.D. Ill. 1995).

[4] Consistent with reality that ICE was not a "co-participant," DOJ did not file charges against it or any of its personnel. DOJ claims the FCPA "does not permit the foreign officials themselves to be charged with the receipt of the bribes," but it fails to explain why they were not charged under other statutes. (DOJ Resp. at 7.) Although foreign officials are not subject to the FCPA, they are not immune from prosecution. Recent FCPA prosecutions charged foreign officials who received bribes with money laundering and wire fraud. *Diaz*, No. 09-cr-20346, Doc. 37 (S.D. Fla. Aug. 5, 2010) (former Haiti Teleco official charged); *U.S. v. Antoine*, No. 09-cr-21010 (S.D. Fla. 2010) (same); *U.S. v. Siriwan*, No. 09-cr-00081 (C.D. Cal. 2010) (Thailand government official charged); *see also U.S. v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004).

payments, and procedures for dealing internally with the flow of bribe money. And they concealed all of this until one of their managers, Sapsizian, was arrested and blew the whistle.

In stark contrast, beyond ICE's five rogue individuals who accepted bribes for their own benefit, no evidence shows that ICE had knowledge of the scheme or of those individuals' conduct, that it knowingly participated in it, or that bribery was part of ICE's method of doing business. (Sworn Statement of Julieta Bejarano Hernandez, attached as Ex. A ¶ 7.) Had ICE known, it would have taken prompt action, as it did when the conduct surfaced. Rather than concealing criminal conduct, like Defendants did, ICE immediately terminated those individuals and had them criminally prosecuted. (*Id.* ¶ 11). Further, unlike with respect to Defendants, all of the evidence relating to the pertinent criminal conduct establishes the bribes were paid for the individuals' – not ICE's – benefit, that ICE derived absolutely no benefit from that conduct, and that, indeed, it was severely damaged.

For its part, DOJ failed to appropriately investigate ICE, and its "conclusion" that ICE is a "co-participant" has no support. DOJ relies on statements from one bribe recipient provided to it by Costa Rican authorities, statements of DOJ's lone cooperating witness (Sapsizian), and several Costa Rican newspaper articles. This demonstrates that DOJ essentially did nothing as Sapsizian was cooperating with DOJ since early on. DOJ has not submitted any proof in the record, and does not even try to explain how the "evidence" it discusses somehow renders ICE a "co-participant." In short, because five of ICE's former personnel (out of 16,500) accepted bribes, the DOJ jumped to the conclusion that the company itself was a co-participant in the crime. The law and facts do not support that conclusion.

As the record reflects, receipt of payments from suppliers was then and always has been inconsistent with ICE's policies. (*Id.* ¶ 7.) Although DOJ claims its efforts have spurred ICE to root-out corruption, it submits no evidence showing ICE was not also focused on those efforts back then. For example, DOJ takes credit for ICE's adoption of an Ethics Code, but the record shows it was adopted in 2002, years before DOJ initiated its investigation. (*Id.* ¶ 8). And before adoption of the Code, it was well known at ICE that accepting payments or benefits from companies who did business with it was strictly prohibited. (*Id.*). Importantly, the conduct of individuals identified by DOJ as violating this policy has been or is being appropriately

addressed.[5]  (*Id.* ¶ 11, 12).  In sum, ICE was <u>the object of</u>, not a "participant" in, Defendants' criminal goals.  *See U.S. v. Sanga,* 967 F.2d 1332, 1335 ("Any criminal complicity in the conspiracy … stopped at the point at which she became the object of, rather than a participant in the criminal goals of the conspirators.")[6].  This Court, therefore, should reject DOJ's and Defendants' argument that ICE was a co-participant in the criminal conduct.

## II. THE PLEA AGREEMENTS SHOULD BE REJECTED UNDER THE CVRA BECAUSE DOJ DID NOT SATISFY ITS OBLIGATION TO CONFER WITH ICE

As a victim, the CVRA affords ICE discrete rights, including the right to reasonably confer with the Government.  18 U.S.C. § 3771(a)(6).  As discussed in detail below in Section IV.A, that right was violated here.  That alone requires rejection of the Plea Agreements.  *See* 18 U.S.C. § 3771(b)(1) ("[C]ourt shall ensure that the crime victim is afforded the rights described in [the CVRA]."); *see also Kenna v. U.S. Dist. Ct. for C.D. Cal.*, 435 F.3d 1011, 1017 (9th Cir. 2006).  Indeed, the Senate sponsors of the CVRA explained that courts would remedy violations of the CVRA by "order[ing] those proceedings to be redone."  150 Cong. Rec. S10912 (Oct. 9, 2004) (statement of Sen. Kyl).  Importantly, under the CVRA, DOJ's (and Defendants') arguments about a claimed "speculative" and "complex" restitution process and supposed delays caused by that process, as well as others, are <u>not</u> relevant.  Rather, the issue is simply, (1) is ICE a victim and (2) did DOJ appropriately confer with ICE.  As established in the Petition and below, ICE is a victim and DOJ did not appropriately confer.

## III. ICE IS ENTITLED TO RESTITUTION UNDER THE MVRA, AND THE "COMPLEXITY" EXCEPTION DOES NOT BAR IT

As addressed in ICE's reply to Defendants' response to ICE's Petition (being filed along with this reply), the criminal conduct in these cases triggers entitlement to restitution under the MVRA.  DOJ (and Defendants) vigorously contends that, even if ICE is a victim, restitution is inappropriate because that process would be "complex," "speculative," and unduly prolong the sentencing, so as to outweigh the need to provide restitution.  This so-called "complexity"

---

[5] Hernan Bravo Trejos was terminated by ICE and criminally convicted and ordered to pay over $200,000 to ICE.  Individuals identified as accepting gratuities from a Swedish company were terminated by ICE.  And the employee who allegedly received payment from a British insurance agent that sold re-insurance to ICE has been charged criminally and ICE is contemporaneously pursuing its own civil claims.  (Ex. A ¶ 11).

[6] Also of relevance, the definition of "victim" does not consider the morality or culpability of the victim.  *See U.S. v. Ojeikere*, 545 F.3d 220, 222-23 (2d Cir. 2008).

exception, codified at 18 U.S.C. § 3663A(c)(3)(B), must be rejected because: (1) restitution would not be "complex" or "entirely speculative"; and (2) restitution would not unreasonably delay sentencing and, in any event, any delay would not prejudice the Parties, who have already dramatically delayed these proceedings.

1. A Restitution Amount Can Be Determined With Ease, And It Would Not Be "Entirely Speculative" or "Complex"

As ICE's Declaration of Victim Losses shows, the measure of restitution in this case is not speculative and is easily proven. DOJ's wholly unsupported assertions that evaluating restitution would require (1) "a hearing lasting weeks, if not months," countless witnesses, numerous experts, and scores of exhibits; and (2) "unwinding the corrupted tender process" are pure fabrications. ICE has already submitted its proximate damages in a concise declaration submitted to a U.S. Probation Officer with the assistance of a third party forensics expert, who is finalizing a concise report.[7] *See, e.g., U.S. v. Peterson*, 538 F.3d 1064, 1077-78 (9th Cir. 2008) (court's reliance on declaration and report of losses when measuring restitution was proper.). As that declaration shows, one component of restitution is the amount of bribes ($17,387,4053.74), and that amount has already been established and can readily be awarded. Other components are similarly straightforward and have been calculated with certainty and relative ease, such as costs of undelivered equipment, professional fees incurred, and other itemized discrete costs incurred by ICE. In short, it is DOJ's contention that is "speculative," not ICE's restitution amount.

Although DOJ had initial responsibility for establishing victim losses for restitution calculations, where, as here, it shirks its responsibility, a victim like ICE may "prove up its own claim for restitution ...." *Gamma Tech Ind.*, 265 F.3d at 924 ("So long as the district court orders defendants to pay restitution after *someone* proves the amount by a preponderance of the evidence, there is no reason a non-party [ ] can't carry the burden."); *U.S v. Cloud*, 872 F.2d 846, 855 (9th Cir. 1989). DOJ was obligated to use "best efforts" to accord victims their rights (18 U.S.C. § 3771(c)(1)), yet it failed to investigate ICE's losses or other effects on ICE of Defendants' crimes. In light of that failure, DOJ has no factual basis to claim that ICE's losses are too speculative.

---

[7] On May 20, 2011, ICE submitted a Declaration of Victim Losses to U.S. Probation outlining the scope of ICE's losses. ICE also retained a forensic accountant with relevant experience who spent time at ICE's offices to examine records and meet with personnel to prepare an accurate accounting of losses. ICE is prepared to further substantiate its losses if necessary.

In any event, the law is clear that "determination of an appropriate restitution amount is by nature an inexact science." *U.S. v. Teehee,* 893 F.2d 271, 274 (10th Cir. 1990); *U.S. v. Futrell*, 209 F.3d 1286, 1291-92 (11th Cir. 2000); *U.S. v. Matos*, 611 F.3d 31, 45 (1st Cir. 2010); *U.S. v. Ahidley*, 486 F.3d 1184, 1189 (10th Cir. 2007)(same); *Vaknin,* 112 F.3d at 587 (1st Cir.1997); *U.S. v. Jackson,* 155 F.3d 942, 949 n.3 (8th Cir. 1998).   These cases establish that ICE's Declaration of Victim Losses effectively moots DOJ's contentions of "speculation" and "complexity."

The Court should strive to "reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim," ICE. *Bold*, 412 F. Supp. at 829-30.  ICE has facilitated and streamlined the restitution process to assist DOJ and the Court's determination of a restitution amount in a relatively simplistic, efficient, and short process.  As such, the Court should <u>not</u> decline to order restitution based on perceived, but unsubstantiated, complexity or speculation.  *U.S. v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006) (court abused discretion by relying on perceived complexity to decline restitution under MVRA).   Indeed, courts have measured and awarded restitution in cases that are substantially more complex than these.[8]  Accordingly, this Court should reject the DOJ's (and Defendants') contention that an award of restitution would be "entirely speculative" or involve complexity.

2. <u>Even Assuming Restitution Would Delay Sentencing, It Would Still Not Outweigh The Need For It</u>

The argument that restitution should not be awarded to ICE due to purported consequent delay in the sentencing process rings hollow and is contrary to the principle that intended beneficiaries of the MVRA's procedural mechanisms are the victims, not the victimizers.  *U.S. v. Balentine*, 569 F.3d 801, 806 (8th Cir. 2009).  As an initial matter, as discussed in the previous section, there would be no material delay.  In any event, any such delay would be attributable to

---

[8] *See, e.g., U.S. v. Gordon*, 393 F.3d 1044, 1054-55 (9th Cir. 2004) (noting district court's "fairly sophisticated analysis in determining the restitution amount"); *Bold*, 412 F. Supp. 2d at 829 ("Court does not regard [restitution calculation] ... as so complex that ... they would bar restitution here ... and courts should not ... lightly refuse to award restitution ... simply because calculating an award may present complications."); *U.S. v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (although aware of difficulties involved in ordering restitution, court "did not consider the process too burdensome ... in proceeding with restitution in this admittedly complex case."); *U.S. v. Hand,* 863 F.2d 1100, 1104 (3rd Cir.1988)("[d]ifficulties of measurement ... should not bar restitution").

the Parties, not to ICE. Defendants announced the settlement terms of the Deferred Prosecution Agreement ("DPA") and Plea Agreements in January 2010,[9] but waited <u>one year</u> before executing the agreements on December 28, 2010, and initiating these actions. *Id.* at 2542 (reason and party responsible for delay must be considered). In contrast, since learning of the agreements, ICE has repeatedly contacted DOJ, documented its losses with the U.S. Probations Office, and submitted to this Court the legal and factual basis for its entitlement to restitution.

Also as shown in the previous section, the record here does not support a finding of "complexity." Nevertheless, even if it did, that narrow exception to mandatory restitution would require balancing the purported complexity of awarding restitution and delay to proceedings with the interest in providing restitution to a victim. Here, that balance favors an award of restitution for a number of reasons. First, no prejudice would result to Defendants, corporations that have already waited, by choice, nearly 18 months to be sentenced and who can show no harm from further delay. *Dolan*, 130 S. Ct. at 2542. Second, the MVRA requires speed primarily to <u>aid victims</u>. *Dolan*, 130 S. Ct. at 2540. Third, although the parties assert restitution would involve "weeks, if not months" of hearings and proceedings, such assertion is unsubstantiated and contradicted by the record and availability of all necessary documentation in ICE's possession. Fourth, ICE stands to suffer substantial and irreparable harm should its statutory right to restitution be denied, an important item that should not be overlooked.

## IV. THE RULE 11(c)(1)(C) PLEA AGREEMENTS AND DPA MUST BE REJECTED

From the outset, DOJ, with Defendants' assistance, has tried to circumvent the statutorily-created right to restitution and "cram through" its "deal" as quickly as possible by: submitting Rule 11(c)(1)(C) Plea Agreements, failing to confer with crime victims, agreeing to waiver routine pre-sentencing procedures to prevent submission of the case to U.S. Probations, and agreeing to combine the plea and sentencing steps. Although expediency has value at times, here it appears designed solely to evade statutory obligations. As discussed in ICE's Petition, the Court should reject the DPA and Agreements for numerous independent reasons.

---

[9] Defendants' 2009 Annual Report stated, "[i]n December 2009 we reached agreements in principal with the ... the US Department of Justice with regard to the settlement of their ongoing investigations involving our alleged violations of the Foreign Corrupt Practices Act .... Under the agreement in principal with the DOJ we would enter into a three-year deferred prosecution agreement ... and we would pay a total criminal of U.S.$92 million, payable in four installments .... In addition, three of our subsidiaries ... would each plead guilty ...." (Pet. Ex. O.)

**A.  The Agreements Should Be Rejected Because ICE Was Denied Its Right To Confer With DOJ Before Entry Of The Guilty Plea Agreements**

DOJ's response focuses on discussions with ICE's counsel and hearing notices it provided <u>after</u> it reached Plea Agreements with Defendants, and only after ICE insistently battered on its door.  (DOJ Resp. at 13-19.)  According to DOJ, these "Johnny-come-lately" communications satisfied ICE's victim rights.  DOJ, however, overlooks ICE's critical right to confer with the government <u>before</u> the Plea Agreements were reached.  *In re Dean*, 527 F.3d 391, 394-96 (5th Cir. 2008) ("There are clearly rights under the CVRA that apply before any prosecution is underway .... Logically, this includes the CVRA's establishment of victims' 'reasonable right to confer' with the attorney for the Government.");  *Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d at 546 (D.N.J. 2009) ("The CVRA clearly provides for victims' rights ... before a prosecution has been initiated.");  18 U.S.C. § 3771(a)(5).

Further, DOJ's contention that it timely conferred and provided notice to ICE from inception of these cases disregards that this prosecution has been ongoing for <u>four years</u>.  DOJ began its investigation of Defendants in 2004 when information surfaced about their payment of bribes to secure ICE's business.  <u>Prosecution</u> began in 2007, when DOJ charged in this Court Sapsizian and Valverde for their participation in and aiding and abetting Defendants' scheme and, in particular, for conduct in Costa Rica.  These cases are simply a continuation (and, disconcertingly, the likely conclusion) of the criminal proceeding against those agents of Defendants – the only two ever charged by DOJ.  The three cases involve the same underlying conduct, the same DOJ counsel, and were brought in the same courthouse.  And DOJ moved for transfer of these two cases to Judge Seitz, who presided over the case against Sapsizian and Valverde, because, in DOJ's own words, "a substantial part of the criminal information in the instant matter[s] involves the Costa Rica bribery allegations that gave rise to the charges against Sapsizian and Valverde ... [and Sapsizian and Valverde's case] substantially overlaps with the conduct charged in the instant case."  (Case No. 10-20907 Doc. 2.)

Although these matters have been <u>pending in court since 2007</u>, ICE was <u>never</u> consulted.  The CVRA obligated DOJ to contact and confer with ICE years ago, even under DOJ's view that victim rights only attach after commencement of a case.  Yet DOJ never once consulted ICE, let alone to determine whether it was proximately harmed by Defendants' conduct or to substantiate DOJ's assertion that ICE was a "co-participant."  The DOJ paid no mind whatsoever to ICE until ICE repeatedly contacted the government to notify that it had been damaged.  (Declaration of

Burton W. Wiand, attached as Ex. B ¶¶ 7, 9, 14.).  Only after ICE approached DOJ was it afforded any notice.  (*Id.* ¶ 9.)  But by then, ICE was already receiving CM/ECF notices of hearings due to its counsel's efforts. Also by that time, these cases against Defendants were essentially complete because the agreements were reached in December 2010.  It is patently obvious from the circumstances – including Sapsizian's prosecution in 2007 with no notice to ICE and DOJ's vigorous efforts to contest ICE's rights – that had ICE not taken the initiative, DOJ never would have provided it any notice.[10]

## B.  The Terms Of The Plea Agreements Are Too Lenient And The DPA Does Not Comport With The McNulty Memorandum

As detailed in the Petition, the Plea Agreements are too lenient.  (Pet. at 15-16.) Similarly, the DPA does not comport with the McNulty Memorandum (Pet. Ex. Y) and should be rejected.  *See* 18 U.S.C. § 3161(h)(2) (acceptance of DPA is contingent on judicial approval). Relevant considerations under that Memorandum include pervasiveness of wrongdoing within the company, the company's history, the payment of restitution, and the adequacy of prosecution of individuals.  Not one of those factors supports the use of a DPA to sanction Defendants' criminal conduct, so the DPA should be rejected too.

In response, DOJ boasts that the fines imposed by the Plea Agreements are the second largest ever under the FCPA.  As shown in this reply and in the Petition, that boast misses the point.  When the fine is placed into context, it is readily apparent that it is far too lenient and pf not deterrence.  As ICE's Victim Loss Statement establishes, its damages are at least almost twice the amount of the fine.  Further, for their 2010 fiscal year, Defendants reported revenues in one year of over <u>$21 billion</u>.  Defendants' scheme lasted for decades.  A fine should be a deterrent, not a minor cost of doing business.

---

[10] Trying to deflect blame for failing to meaningfully confer with ICE regarding its victim status, DOJ asserts that it requested "legal authority" concerning that status but that ICE failed to provide it. (DOJ Resp. n. 9).  In reality, ICE provided DOJ substantial support for its position in letters, other correspondence, and in legal filings that contained substantial case law and evidence. (Exh. B ¶ 9).  But the law does not place the burden on ICE to prove that it is a victim. Rather, it obligated DOJ to investigate ICE's victim status, and DOJ failed to comply.  DOJ had an affirmative obligation to "make their *best efforts* to see that crime victims are notified of, and accorded, their rights." 18 U.S.C. § 3771(c)(1).  At best, here it made an untimely, half-hearted effort, and that deficiency warrants rejection of the Rule 11(c)(1)(C) Plea Agreements.

Respectfully submitted,

**s/Gianluca Morello**
Burton W. Wiand, FBN 407690
bwiand@wiandlaw.com
George L. Guerra, FBN 0005762
gguerra@wiandlaw.com
Gianluca Morello, FBN 034997
gmorello@wiandlaw.com
Dominique H. Pearlman, FBN 0044135
dpearlman@wiandlaw.com
Jordan D. Maglich, FBN 0086106
jmaglich@wiandlaw.com
WIAND GUERRA KING P.L.
3000 Bayport Drive, Suite 600
Tampa, FL  33607
Tel: (813) 347-5109

Damaso Saavedra, Esq., FBN 607886
dsaavedra@lawspgh.com
Randolph Brombacher, Esq., FBN 069876
rbrombacher@lawspgh.com
SAAVEDRA, PELOSI, GOODWIN &
  HERMANN, A.P.A.
312 Southeast 17th Street, Second Floor
Fort Lauderdale, Florida  33316
Tel: (954) 767-6333

Paul G. Cassell, Esq. (*pro hac vice*)
cassellp@law.utah.edu
332 South 1400 East, Room 101
Salt Lake City, UT 84112-0730

Mario Thomas Gaboury, Esq. (*pro hac vice*)
mgaboury@newhaven.edu
300 Boston Post Road
West Haven, CT  06516

*Attorneys for Petitioner Instituto Costarricense de Electricidad*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 27, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

**s/Gianluca Morello**
Gianluca Morello, FBN 034997